# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| THOMAS R. TIBBLE, | ) | |
| | ) | |
| Trustee, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-mc-05006-DGK |
| | ) | |
| DAWN ANGEL DANIELS | ) | |
| d/b/a AD CONSULTING SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REGARDING MOTION TO COMPEL

This matter arises from a bankruptcy trustee's attempt to satisfy a default judgment. Defendant Dawn Daniels and her husband, Tony Daniels (collectively "the Daniels"), failed to comply with a court order directing them to provide certain financial documents. They also declined to answer almost all questions during a Rule 69 examination by invoking their right against self-incrimination.

Now before the Court is the bankruptcy's trustee's motion (Doc. 12) for an order holding the Daniels in contempt for failing to comply with the court order. In the alternative, the bankruptcy trustee requests an order compelling the Daniels to produce the documents and answer questions.

For the following reasons, the motion is GRANTED IN PART. The Court ORDERS the Daniels to produce the requested documents on or before June 27, 2016. The Court also ORDERS the Daniels to file separate briefs explaining in detail the factual basis for their invocation of their right to remain silent for each question they refused to answer at the first examination and that they still refuse to answer. These briefs shall be filed on or before June 27, 2016, and may be filed ex parte and under seal.

After reviewing the briefs, the Court will rule on the validity of the privilege with respect to each question. If appropriate, the Court will also set a date for a second Rule 69 examination.

**Background**

The Bankruptcy Court for the Western District of Michigan appointed Plaintiff Thomas R. Tibble the Chapter 7 Bankruptcy Trustee ("the Trustee") for Michigan Biodiesel, LLC in *In re Michigan Biodiesel, LLC*, Case No. 10-05786-SWD. On October 9, 2013, the Trustee filed suit against Defendant in the Western District of Michigan for receiving money that her brother-in-law, Tracy Daniels, had improperly transferred to her in 2011 from Michigan Biodiesel's operating account. On January 8, 2014, the Trustee obtained a default judgment for $328,221.64 ("the Judgment") against Defendant. The Judgment was certified and registered in this District on January 22, 2014.

To determine Defendant's ability and means to satisfy the Judgment and to locate her non-exempt assets, the Trustee sought to conduct a Rule 69 post-judgment examination[1] of the Daniels. The Court referred the matter to a magistrate judge.[2] On April 3, 2015, the magistrate granted the motion and issued an order (Doc. 4) ("the Order") directing the Daniels to produce twenty-two types of documents from which the Trustee could discern Defendant's ability and means to satisfy the Judgment. Among other things, the Order sought: deeds, contracts and other papers identifying any real estate in which Defendant had an interest; earnings statements and employment contracts; income tax returns; bank statements from all banks or other financial

---

[1] Federal Rule of Civil Procedure 69 provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located. Fed. R. Civ. P. 69(a)(2). This entitles a judgment creditor to conduct "a very thorough examination of the judgment debtor," and to depose "almost anyone [] who may provide relevant information." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998).

[2] The Honorable David Rush, Magistrate Judge for the Western District of Missouri.

institutions in which Defendant had an account of any kind; and other documents or accounts tending to show Defendant's net worth.  Order at 1-3.

The Rule 69 examination was originally set for May 21, 2015, but was rescheduled to July 21, 2015, after Defendant requested additional time to compile the requested documents.

**A.    Document Production**

Prior to and on the day of the examination, the Daniels produced some documents; they did not, however, produce those documents most critical to discerning Defendant's ability and means to pay the Judgment.  For example, while they produced a bank statement dated April 30, 2015, for Angel Eyes Photography LLC (a small business checking account), as well as statements from Liberty Bank for Dawn Chick Daniels d/b/a AD Consulting Services from June 30, 2009, through September 30, 2013, they did not produce any bank or financial statements for personal accounts held by them either individually or jointly.  Additionally, the Liberty Bank statements reflect regular transfers to a checking account numbered 1100166650 and another account ending in 569 into which transfers in excess of $250,000 were made during a three month period, but the Daniels did not produce any statements for these accounts.

With respect to the Order's directive to provide real estate documents, the Daniels produced a warranty deed for a lot described in three sets of mortgage documents as Lot 3 of Deer Meadows of Lawrence County, Missouri.  But they did not produce other documents identified in the Order, such as W-2 forms, 1099 forms, paycheck stubs, current/prior real estate holdings, and statements of debts and assets, which a bank would have required them to provide before making a loan.

Finally, the Daniels did not produce any documents related to their salary, monthly commissions, or earnings statements, or any other information showing their income or means of support.

The Daniels did not invoke their right against self-incrimination with respect to any act of production. In fact, they provided some documents shortly before the hearing began.

**B.    Refusal to Answers Questions During the Examination**

The Daniels appeared for the debtor examination but refused to answer any substantive questions. At the beginning of the hearing, the Daniels, through attorney Dee Wampler, stated that they were invoking their right against self-incrimination under the Fifth Amendment to the United States Constitution and its state analog under Article 1, Section 9 of the Missouri Constitution, and they would refuse to answer any question other than their name, address, Social Security number, and date of birth. July 21, 2015, Hr'g Tr. at 8-9 (Doc. 13-2). The Daniels claimed they were going to be prosecuted in the Western District of Michigan "for false tax returns and false claims and mail fraud and wire fraud under the applicable statutes and they may also conceivably be prosecuted in state court there, as well as state court here." *Id.* at 9.

The Trustee's attorney responded that he had spoken with an Assistant United States Attorney in the Western District of Michigan. This prosecutor indicated the Daniels had been given limited immunity in a federal criminal case related to Michigan Biodiesel brought against Tony Daniels' brother, Tracy Daniels, but he was not aware of any other potential prosecution against either Defendant Dawn Daniels or Tony Daniels. The Trustee subsequently submitted communications from the United States Attorney's Office which indicates the Daniels likely have, in fact, received limited immunity in that case in exchange for their testimony.[3]

---

[3] The Trustee submitted a letter dated October 6, 2014 (Doc. 13-3 at 1-2), and an email dated October 7, 2014 (Doc. 13-3 at 3), from the United States Attorney's office for the Western District of Michigan. The letter outlines the

4

During the subsequent Rule 69 examination, the Trustee asked Defendant whether she had produced specific documents. *Id.* at 19-25. The Trustee also questioned the Daniels about any property Defendant owned, transfers or gifts she had made, or other income or assets Defendant might have. *Id.* at 27-36, 43-57. The Daniels answered questions concerning their names and addresses, but refused to answer every other question, typically doing so by stating "Take the Fifth" or "Fifth Amendment," incorporating a general objection articulated by counsel at the beginning of the hearing, but not making any detailed factual basis for the invocation. *Id.* at 8-57.

## Discussion

The Trustee argues that the Daniels have violated the Order by: (1) deliberately failing to produce most of the requested documents; and (2) refusing to answer almost every question by making a blanket invocation of the right against self-incrimination. With respect to the documents, the Trustee contends the Daniels have simply failed to produce the most important documents, despite being granted additional time for the purpose of compiling them. With respect to the questioning, the Trustee argues the Daniels' blanket invocation of the Fifth Amendment was improper, and that they have not shown they will face a real hazard if required to answer.

In response, the Daniels state they have substantially complied with the Order's directive to provide documents. They make a conclusory assertion that they have made a valid invocation of their rights against self-incrimination because they could face prosecution, and that answering the Trustee's questions might incriminate them. They do not, however, argue that the act of production might incriminate them.

---

terms under which the Daniels would make a proffer statement, and the email confirms that the Daniels did, in fact, give truthful proffer statements. The email states they will receive their non-prosecution agreements after they have testified before the grand jury, which was expected to occur in November or December of 2014.

5

The Daniels' arguments are not persuasive.

With respect to the production of documents, the record is clear that the Daniels have not substantially complied with the Order, nor have they established any valid reason for failing to provide most of the requested documents, and it is now too late to assert any Fifth Amendment or other legal argument for refusing to provide them. *See Koenig v. Bourdeau Constr. LLC*, No. 4:13-cv-0477SNLJ, 2015 WL 1411937, at *3 (E.D. Mo. Mar. 26, 2015) ("As there were no other [Fifth Amendment] objections made at the time of the deposition, all other objections have been waived.") Accordingly, this portion of the motion is GRANTED. The Daniels shall provide all of the requested documents on or before June 1, 2016. If they fail to comply, the Court will hold them in contempt.

Turning to the privilege question, the Court notes that in this case federal law governing the privilege against self-incrimination applies, not Missouri law. State privilege law applies in federal court when state law provides the applicable rule of decision, but when federal law governs the underlying subject matter, federal law concerning the privilege controls. Fed. R. Evid. 501; *see Couch v. United States*, 409 U.S. 322, 335 (1973) (rejecting taxpayer's claim of accountant-client privilege in response to IRS summons issued to her accountant because no such privilege exists under federal law). Since this was a Rule 69 examination taken to enforce a judgment rendered in a bankruptcy proceeding, federal privilege law applies. *See Koenig*, 2015 WL 1411937, at *2 (holding federal privilege law, not state law, governs in Rule 69 examination taken following a judgment entered in an FLSA action).

Under federal law, to invoke the privilege "the witness must have 'reasonable cause to apprehend danger from a direct answer.'" *Schembre v. AGR Constr. Co.*, No. 4:06-cv-943(CEF), 2007 WL 3268443, at *2 (E.D. Mo. Nov. 2, 2007) (quoting *Hoffman v. United States*, 341 U.S.

6

479, 486 (1951)). While the privilege extends not only "to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant," *Hoffman*, 341 U.S. at 486, "[t]here is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings." *Capitol Prods. Corp. v. Hernon*, 457 F.2d 541, 542 (8th Cir. 1972).

To invoke the privilege in a noncriminal proceeding, the witness must specifically claim it with respect to a particular question. *Id.* The court then determines whether the witness is facing a real risk of incrimination. *Id.* at 542-43. In making this determination, the court considers whether it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486-87.

This is not a criminal case; this is a civil case where a blanket invocation is impermissible. *See Capitol Prods.*, 457 F.2d at 542. The Court finds the Daniels have failed to show that they are facing a real risk of incrimination with respect to answering the questions they refused to answer. Indeed, their indiscriminate invocation of the waiver appears designed to prevent the Trustee from satisfying the Judgment. In the context of this case, it is difficult to see how the answer to "Does your wife own any patents, copyrights, licenses, franchises or any other general intangible property?" could be incriminating, much less how the answer to "Are you currently married?" or "What's your husband's full name?" could be. Yet the Daniels have refused to answer each of these questions. Hr'g Tr. at 26, 48-49. As in the *Koenig*, *Schembre*, and *Capitol Products* cases, there is nothing in the record that suggests "the purpose of the examination was anything other than an ordinary Rule 69 deposition for the purpose of discovering assets to satisfy the judgment." *Koenig*, 2015 WL 1411937, at *3; *see Capitol*

7

*Prods.*, 457 F.2d at 543 ("The defendant has not alleged that the purpose of the examination was anything other than an ordinary search of his assets in order to satisfy the judgment against him."); *Schembre* 2007 WL 3268443, at *3 ("As in the present matter," there was not "any reason to believe that the purpose of the examination was anything other than a search of his assets to satisfy the judgment."). This weighs in favor of ordering the Daniels to answer the Trustee's questions.

The wrinkle here is that the Daniels have been the targets of a criminal investigation for their actions at issue here. But they have also appear to have received immunity from prosecution in that case, and nothing in the record indicates they are the target of any other criminal investigations related to this matter.

Of course, the lack of evidence in the record showing that answering the Trustee's questions might incriminate the Daniels may just reflect defense counsel's failure to make an adequate record supporting their invocation. This seems unlikely given that the magistrate repeatedly cautioned defense counsel that a blanket invocation was not permissible, and that he would need to make a clear record with respect to each question. Hr'g Tr. at 7, 10-12. Even so, out of an abundance of caution, before the Court compels the Daniels to answer any of the Trustee's questions, it will give them one final opportunity to provide a factual basis for their assertion that they have "reasonable cause to apprehend danger from" answering these questions. *See Capitol Prods.*, 457 F.2d at 544 (directing the district court to "give the defendant an opportunity to develop the facts underlying his fear of incrimination").

Accordingly, Dawn Daniels and Tony Daniels shall each file a brief explaining in detail the factual basis for their invocation of their right to remain silent for each question they refused

to answer during the first examination and still refuse to answer.[4] These briefs shall explain: (1) whether each has received immunity in the federal criminal case/investigation in the Western District of Michigan, and if so, provide a copy of the grant of immunity; (2) the status of the criminal case/investigation in the Western District of Michigan; (3) whether either of the Daniels is currently the target of any other state or federal criminal investigations related to this civil case, and if so, the details of that investigation; and (4) the detailed factual and legal basis for their belief that they have "reasonable cause to apprehend danger from" directly answering each of the questions they refused to answer during the first examination and that they still refuse to answer. These briefs shall be filed on or before June 27, 2016, and may be filed ex parte and under seal to avoid any risk that even explaining why they cannot answer might incriminate them.

After the Court has reviewed these briefs, it will rule on the propriety of the invocation for each question and then, if appropriate, set a date for a second examination. If the Daniels fail to file such briefs, the Court will simply rule on the existing record.

For the reasons discussion above, the motion (Doc. 12) is GRANTED IN PART.

**IT IS SO ORDERED.**

Date:  June 6, 2016                               /s/ Greg Kays
                                                                GREG KAYS, CHIEF JUDGE
                                                                UNITED STATES DISTRICT COURT

---

[4] Defendant, for example, might drop her objection to answering the question, "Are you currently married?"