# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| THOMAS R. TIBBLE, )<br>)<br>    Trustee, )<br>)<br>    v. )<br>)<br>DAWN ANGEL DANIELS )<br>d/b/a AD CONSULTING SERVICES, )<br>)<br>    Defendant. ) | Case No. 3:14-mc-05006-DGK |

## ORDER REGARDING MOTION TO COMPEL

This matter arises from a bankruptcy trustee's attempt to locate assets and satisfy a default judgment against Defendant Dawn Daniels. After Defendant and her husband, Tony Daniels (collectively "the Daniels'"), failed to provide certain documents and declined to answer questions during a Rule 69 examination by making a suspect invocation of their right against self-incrimination, the bankruptcy trustee moved to hold the Daniels in contempt (Doc. 12). This Court subsequently ordered the Daniels to provide all the requested documents and to file a brief explaining the factual basis for their invocation of their right to remain silent for each question they refused to answer (Doc. 18).

Now before the Court is the Daniels' response (Doc. 20). After careful review, the Court finds the Daniels have not established reasonable cause to apprehend danger from directly answering any of the Trustee's questions. Accordingly, the Court orders the Daniels to sit for another Rule 69 examination and provide full responses to the questions posed during the initial Rule 69 examination, as well as to answer any reasonable follow-up questions. If they fail to appear or fail to do so, they will be placed in contempt of court.

## Background

The Bankruptcy Court for the Western District of Michigan appointed Plaintiff Thomas R. Tibble the Chapter 7 Bankruptcy Trustee ("the Trustee") for Michigan Biodiesel, LLC in *In re Michigan Biodiesel, LLC*, Case No. 10-05786-SWD. On October 9, 2013, the Trustee filed suit against Defendant in the Western District of Michigan for receiving money that her brother-in-law, Tracy Daniels, had improperly transferred to her in 2011 from Michigan Biodiesel's operating account. On January 8, 2014, the Trustee obtained a default judgment for $328,221.64 ("the Judgment") against Defendant which was certified and registered in this district on January 22, 2014.

To determine Defendant's ability and means to satisfy the Judgment and to locate her non-exempt assets, the Trustee sought to conduct a Rule 69 post-judgment examination[1] of the Daniels. The Court referred the matter to a magistrate judge.[2] On April 3, 2015, the magistrate issued an order (Doc. 4) ("the Magistrate's Order") directing the Daniels to produce twenty-two types of documents, including: deeds, contracts and other papers identifying any real estate in which Defendant had an interest; earnings statements and employment contracts; income tax returns; bank statements from all banks or other financial institutions in which Defendant had an account of any kind; and other documents or accounts tending to show Defendant's net worth. Order at 1-3. The Rule 69 examination was rescheduled to July 21, 2015, at Defendant's request to provide the Daniels additional time to gather the documents.

---

[1] Federal Rule of Civil Procedure 69 provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). This entitles a judgment creditor to conduct "a very thorough examination of the judgment debtor," and to depose "almost anyone [] who may provide relevant information." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998).

[2] The Honorable David Rush, Magistrate Judge for the Western District of Missouri.

Prior to and on the day of the examination, the Daniels produced some, but not all, of the requested documents, but did not produce those most helpful in discerning Defendant's ability and means to pay the default Judgment. They did not produce any bank or financial statements for personal accounts held by them either individually or jointly, even though they provided bank records from business accounts showing regular transfers in excess of $250,000 in a three-month period to checking accounts which they apparently controlled. They also produced documents indicating that they had three mortgages, but declined to provide any documents that a bank would presumably require them to provide before giving them a loan, such as W-2 forms, 1099 forms, paycheck stubs, current/prior real estate holdings, salary information, earnings statements, and statements of debts and assets. The Daniels never invoked their right against self-incrimination with respect to any act of production.

During the debtor examination, the Daniels refused to answer any substantive questions. Through their attorney, Dee Wampler, they stated that they were invoking their right against self-incrimination under the Fifth Amendment to the United States Constitution and its state analog under Article 1, Section 9 of the Missouri Constitution, and they would refuse to answer any question other than their name, address, Social Security number, and date of birth. July 21, 2015, Hr'g Tr. at 8-9 (Doc. 13-2). The Daniels claimed they were going to be prosecuted in the Western District of Michigan "for false tax returns and false claims and mail fraud and wire fraud under the applicable statutes and they may also conceivably be prosecuted in state court there, as well as state court here." *Id.* at 9. They did not provide any factual basis for the invocation, despite being cautioned by the magistrate that they needed to provide some factual basis for their invocation. *Id.* at 7-57.

In fact, although a federal criminal case had been brought in the Western District of Michigan against Tony Daniels's brother and one other individual, the Daniels had already made

3

an agreement in that case to receive limited immunity in exchange for their testimony. While they could theoretically be prosecuted in some other jurisdiction for the subject of their testimony, they are not currently or prospectively the targets of any criminal investigations.

The Trustee subsequently moved to hold the Daniels in contempt or to compel discovery (Doc. 12), and the Court partially granted the motion. The Court ordered the Daniels to provide all of the requested documents, and warned them that if they failed to do so, they would be held in contempt. The Court also ordered them to file individual briefs explaining "the detailed factual and legal basis for their belief that they have 'reasonable cause to apprehend danger from' directly answering *each of the questions* they refused to answer during the first examination and that they still refuse to answer." Order at 9 (Doc. 18) (emphasis added).[3]

In response, the Daniels filed a short brief claiming that they had produced all the requested documents. Defense counsel wrote, "They have what they have and if any documents are allegedly omitted or have not been produced, Defendants are willing to sign the necessary consent forms for the production of such additionally required documents that the court might direct." Resp. at 2. With respect to explaining the factual and legal basis for the invocation of their right against self-incrimination, Defense counsel wrote:

> It is true that they refused to answer almost every question by making "blanket invocation" of the Fifth Amendment Privileges since current state and federal law, in counsel's opinion, would hold that if they answered some questions, then they potentially would waive their Fifth Amendment Rights and cannot pick and choose which answers to give so therefore a blanket invocation complies with the current status of Fifth Amendment law.

Resp. at 4 (Doc. 20). This response did not cite any caselaw or other legal authority.

## Discussion

---

[3] To avoid any risk that explaining why they could not answer these questions might incriminate them, the Court allowed the Daniels to file their briefs ex parte and under seal.

4

The Trustee asks the Court to hold the Daniels in contempt for failing to produce all documents. The Daniels state they have produced all responsive documents.[4]

Although the Court doubts they have, the existing record is insufficiently developed for the Court to hold the Daniels in contempt for failing to do so. If the Trustee can identify a particular document the Daniels have not provided, but should have, the Court will revisit the issue of whether they should be held in contempt.

With respect to whether the Daniels have made a valid invocation of their state or federal right against self-incrimination, the Court finds they have not. The law here is clear and well-established; the previous order discussed it at length. After noting that federal privilege law applies to this case, the order observed:

> While the privilege extends not only "to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant," *Hoffman*, 341 U.S. at 486, "**[t]here is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings**." *Capitol Prods. Corp. v. Hernon*, 457 F.2d 541, 542 (8th Cir. 1972).
>
> **To invoke the privilege in a noncriminal proceeding, the witness must specifically claim it with respect to a particular question.** *Id.* The court then determines whether the witness is facing a real risk of incrimination. *Id.* at 542-43.

Order at 7 (emphasis added). Defense counsel's suggestion otherwise—that "a blanket invocation complies with the current status of Fifth Amendment law"—is erroneous. Indeed, the

---

[4] The Court is unsure what to make of Defense counsel's statement that "if any documents are allegedly omitted or have not been produced, [the Danielses] are willing to sign the necessary consent forms for the production of such additionally required documents that the court might direct." The Magistrate's Order and the Court's previous order clearly identified what documents should have be provided. Being willing to sign a consent form is not compliance. If such documents exist and have not been provided to the Trustee, the Court will hold the Danielses responsible.

5

Case 3:14-mc-05006-DGK   Document 21   Filed 07/26/16   Page 5 of 7

Court already corrected this misstatement of the law: "This is not a criminal case; this is a civil case where a blanket invocation is impermissible. *See Capitol Prods.*, 457 F.2d at 542."[5]

The previous order also found:

> [T]he Daniels have failed to show that they are facing a real risk of incrimination with respect to answering the questions they refused to answer. Indeed, their indiscriminate invocation of the waiver appears designed to prevent the Trustee from satisfying the Judgment. In the context of this case, it is difficult to see how the answer to "Does your wife own any patents, copyrights, licenses, franchises or any other general intangible property?" could be incriminating, much less how the answer to "Are you currently married?" or "What's your husband's full name?" could be. Yet the Daniels have refused to answer each of these questions. Hr'g Tr. at 26, 48-49. As in the *Koenig*, *Schembre*, and *Capitol Products* cases, there is nothing in the record that suggests "the purpose of the examination was anything other than an ordinary Rule 69 deposition for the purpose of discovering assets to satisfy the judgment." *Koenig*, 2015 WL 1411937, at *3; *see Capitol Prods.*, 457 F.2d at 543 ("The defendant has not alleged that the purpose of the examination was anything other than an ordinary search of his assets in order to satisfy the judgment against him."); *Schembre* 2007 WL 3268443, at *3 ("As in the present matter," there was not "any reason to believe that the purpose of the examination was anything other than a search of his assets to satisfy the judgment.").

*Id.* at 7-8. The Court concluded, "This weighs in favor of ordering the Daniels to answer the Trustee's questions." *Id.*

Instead of ordering the Daniels to answer the questions immediately, the Court gave them one last opportunity to make a record supporting the invocation of their rights. In fact, the Court *directed* them to file briefs making such a record. *Id.* at 9.

---

[5] This makes the Court wonder if Defense counsel is reading its orders. The Court reminds Defense counsel that the representations in his filings must be warranted by existing law or by a nonfrivolous argument for reversing existing law. Fed. R. Civ. P. 11(b)(2).

6

Case 3:14-mc-05006-DGK   Document 21   Filed 07/26/16   Page 6 of 7

The Daniels, however, failed to make such a record with respect to any one of the Rule 69 examination questions posed. Their brief does not establish reasonable cause to apprehend danger from directly answering any of the Trustee's questions, much less all of the questions they refused to answer. It is patently insufficient.

Accordingly, the Court hereby orders the Daniels to sit for another Rule 69 examination at the Trustee's and magistrate's convenience. Prior to this examination, the Daniels must comply with any of the Trustee's outstanding discovery requests. During this examination, the Daniels shall not refuse to answer any question posed during the first Rule 69 examination by invoking their right against self-incrimination, or any other privilege.[6] The Daniels shall provide full responses to the questions posed, included answering any reasonable follow-up questions. If either of the Daniels fails to appear or fails to comply with this order, he or she will be placed in contempt of court. If placed in contempt of court, the Daniels will face a range of potential sanctions, including, but not limited to, imprisonment, fines, and having to reimburse the Trustee all costs associated with these examinations.

## Conclusion

For the reasons discussion above, the Trustee's motion (Doc. 12) is taken under advisement pending the Daniels' compliance with this order.

**IT IS SO ORDERED.**

Date: July 26, 2016         /s/ Greg Kays
                            GREG KAYS, CHIEF JUDGE
                            UNITED STATES DISTRICT COURT

---

[6] That is, the Danielses will not be permitted to attempt an "end run" around this order by asserting a new privilege that they could have asserted during the first Rule 69 examination, but did not.